### Charles T. Morris, Appellant, v. Calvin Vulgamott, Appellee.

### Gen. No. 5344.

DAMAGES—*when reversal ordered notwithstanding only right to nominal, shown by the evidence.* Ordinarily, a reversal will not be awarded where the record discloses only the right to recover nominal damages but if from such record it is apparent that the plaintiff may upon a subsequent trial show a basis for more than nominal damages, a reversal will be ordered.

Action on the case. Appeal from the Circuit Court of Stark county; the Hon. T. N. GREEN, Judge, presiding. Heard in this court at the April term, 1910. Reversed and remanded. Opinion filed November 18, 1910.

KERNS & FLING, for appellant.

JAMES H. RENNICK, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

Appellant sued appellee in an action on the case for deceit in a horse trade and afterwards filed a declaration in assumpsit and, still later, filed a motion to change the form of action from case to assumpsit. That motion was never acted upon by the court, but defendant filed a plea of *non assumpsit* and issues were joined on that plea. There was a jury trial and, at the close of plaintiff's evidence, the court directed a verdict for defendant, denied a motion for a new trial, and entered judgment against plaintiff below for costs, from which he appeals.

The declaration contains five special counts and the common counts. The first count charged that in consideration that appellants would buy of appellee a certain stallion for $300 appellee promised that said horse would be delivered to appellant sound and not over twelve years old; that said horse was a standard bred and registered trotting stallion with a record of trotting one mile in two minutes and eight seconds; that appellee would furnish appellant a pedigree of said horse setting forth such age, breeding and trotting record; that, if said horse should prove unsound or more than twelve years old or should prove not to be standard bred and registered, with a record of one mile in 2.08, or if appellee failed to furnish appellant with a pedigree of said horse, showing him to be a standard bred and registered trotting stallion with a record of trotting one mile in 2.08, then appellee would take said horse back and repay appellant said $300 paid by appellant therefor; that appellant, confiding in said promise "did buy the said stallion horse of the said defendant" and paid appellee therefor $300 by delivering to appellee a colt for $75 and two promissory notes of the appellant, payable to the order of the appellee, one for $100 payable in two years and one for $125 payable in one year, each with interest at six per cent per annum; that appellee deceived the appellant, in this, that said horse was not sound and twelve years old, but was unsound and more than twelve years old, and was not a standard bred and registered trotting stallion with a record of trotting one mile in 2.08; that appellee did not furnish appellant a pedigree of said horse showing that he was a standard bred and registered trotting stallion with a record of trotting one mile in 2.08, but wholly failed to furnish the same; whereby said horse became of no value to appellant, and thereupon appellant tendered back said horse to appellee and requested appellee to take back said horse and return to appel-

lant said colt and said notes amounting to $225 or in lieu thereof, pay appellant said $300; and that appellee has not repaid said $300 nor returned said colt and notes, the appellant being ready, willing and able and now offering to return said stallion, but appellee wholly refused so to do. The second count was of like tenor, except that it was confined to the promises alleged that appellee would deliver to appellant said horse sound and just twelve years old, and said second count did not aver expressly a previous tender of the horse to the appellee, but made such tender in the count. The third count was of like tenor with the second count, except that it was confined to the promises alleged to deliver a standard bred and registered trotting stallion with a record of trotting one mile in 2.08. The fourth count was of like tenor with the second, except that it was confined to a promise by appellee to deliver appellant a written pedigree showing said horse to be a full blood Black Hawk Morgan. The fifth count was like the second, except that it was confined to the promise to deliver a pedigree showing said age and a breeding and trotting record of one mile in 2.08.

The proof showed that the contract was made on February 18, 1909; that appellee made the said several representations and promises alleged concerning said horse; that appellee delivered the horse to appellant on February 20, 1909, and received the colt and two notes corresponding to the contract and that he stated to appellant that the pedigree was in the possession of a man in Washington, Illinois, who was sick with a contagious disease and under quarantine and therefore appellee could not get and deliver the pedigree then, but that he would do so in a short time; that in March, 1909, appellant wrote appellee asking for the pedigree and saying that he could not use the horse till he got the pedigree, and that he wanted to borrow $75; that on March 23, 1909, appellee came to

appellant and asked him if he would secure the $75 and appellant said he would by a mortgage on his home; that they then went to a bank in Toulon where appellant resided, and by agreement a new note was drawn and executed by appellant to appellee for $300 and appellee paid appellant the $75 and delivered to him his two notes of $100 and $125 duly cancelled, and appellant gave appellee a mortgage on his homestead, securing said note for $300 and at the same time appellee again told appellant that he would get the pedigree for him as soon as the quarantine was off at Washington, Illinois.

The proof showed that the horse was twenty-one years old, that he was not sound, that he had never been registered, that he had never made the record promised, that he had no pedigree and that he was only one-sixteenth Black Hawk Morgan. Appellant never tendered the horse back before the commencement of the suit, but an hour or so after the suit was begun he met appellee at the depot at eight o'clock P. M. as appellee was taking the train for Peoria, where he lived, and appellant then told appellee that he tendered him the horse and the money he had borrowed, to which appellee replied that "they could not run any bluff on him; that he would not do anything." The horse was not there and appellant did not show appellee any money, though either he or his attorney had the money present. The proof showed that appellant had formerly worked for appellee when appellee lived in Stark county; that the horse was in Peoria when these representations were made and that appellee knew that it was inconvenient for appellant to go to Peoria to see the horse and knew that appellant relied upon the representations. There were also in evidence some letters from appellee to appellant and, among them, one of April 12, 1909, in which appellee offered to sell appellant another stallion twelve years old, with a pedigree and record, and that the papers

were right with him and "no monkey business this time," which might have meant that there was "monkey business" in the way appellee had dealt with appellant about the horse here in question, or might have meant that there had been "monkey business" about the pedigree on the part of the man alleged to have the same at Washington, Illinois.

Appellant now contends that he never bought the horse or acquired the title to him; that the horse was not to be his till he was delivered sound, and not over twelve years old, a full Black Hawk Morgan horse, registered and with a record of 2.08, nor till a written pedigree was delivered to him showing such registry and record. We fail to see how that claim can be sustained under the declaration. The allegation of each count is that appellant did buy the horse, and it is nowhere alleged that the title was not to pass till the horse complied with these conditions and such a pedigree was furnished. Appellant relies chiefly upon Smith v. Hoffman, 122 Ill. App. 198, and Hazelton v. Carolus, 132 Ill. App. 512, but these were each actions on the case for deceit and not in assumpsit.

But while the age and unsoundness of the horse and the slightness of the strain of Black Hawk Morgan in him and his lack of registry and a record are rather false representations than breaches of the contract, and are available rather in the action of deceit originally brought than in the action of assumpsit to which plaintiff changed it, still appellant further alleged and proved a contract to deliver a written pedigree showing certain things concerning the horse, and also averred and proved a breach of that contract and a failure to deliver the pedigree agreed or any pedigree whatever, and that for want thereof, he could not sell the services of the horse, as a stallion.

Appellant did not follow this up by proving either what the horse was in fact worth when he received him, or what he would have been worth if the promised pedigree had been furnished, and therefore it

may well be that the jury could not have awarded more than nominal damages; but it seems clear that the court should have permitted the case to go to the jury, under the proof of the breach of the contract so alleged and proved, and that in the absence of other proof plaintiff must have recovered at least nominal damages. Courts will not reverse a case to permit the recovery of merely nominal damages; but it may be that on another trial appellant will establish a basis for more than nominal damages. The judgment is therefore reversed and the cause is remanded.

*Reversed and remanded.*